Entered on Docket
January 22, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed January 22, 2008

_Marilyn Morgan_
Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br>**JOANN BAKER,**<br>    Debtor. | Case No. 06-50958-MM<br>Chapter 7<br>The Hon. Marilyn Morgan |
| **GE MONEY BANK,**<br>    Plaintiff,<br>v.<br>**JOANN BAKER,**<br>    Defendant. | Adv. No. 06-5164<br>**MEMORANDUM DECISION<br>FOLLOWING TRIAL** |

## INTRODUCTION

Plaintiff and creditor, GE Money Bank, alleges that a $13,900 debt that debtor, Joann Baker, owes to GE Money Bank is excepted from discharge under §523(a)(2) due to false representations that debtor allegedly made while applying for an extension of credit. Having considered the evidence adduced at trial and the arguments of counsel, the court concludes that GE Money Bank has not satisfied its burden of proof and judgment is awarded in favor of Ms. Baker and against GE Money Bank.

# BACKGROUND

Joann Baker is employed as a customer service representative with HSBC. In 2005, Ms. Baker earned approximately $32,000 a year. Her stated income included compensation for overtime she had worked throughout that year. Prior to November 2005, Ms. Baker had incurred credit card debt with MBNA for approximately $13,900. In November 2005, GE Money Bank solicited Ms. Baker to open a credit card account to consolidate her existing credit card debt at a lower interest rate of 16.24 percent per annum. Attracted by the lower interest rate and the opportunity to consolidate her existing credit card debt, Ms. Baker executed the standard GE Money Bank Credit Card Agreement. As a general matter, to obtain a credit card account at GE Money Bank, an applicant completes an application and the company conducts a background credit check. A background credit check typically reveals the number, age and amount of outstanding accounts held by an applicant. Based on information provided in the application, later verified by the company, and a review of her background credit check, GE Money Bank offered Ms. Baker a credit card account and granted her a credit limit of $14,000 at an initial interest rate of 16.24 percent per annum. The GE Money Bank Agreement also allowed her to obtain cash advances up to the established credit limit. On December 12, 2005, Ms. Baker obtained a cash advance from GE Money Bank in the amount of $13,900. GE Money Bank issued a check to Ms. Baker which was made payable to MBNA.

As part of its regular business practice, GE Money Bank sends monthly statements to its customers. The monthly statements reflect the closing date of the account statement, credit limit, annual percentage rate, payments and credits, related fees and current balance. GE Money Bank sent, and Ms. Baker received the following seven monthly statements:

- Following the closing date of December 13, 2005, GE Money Bank sent Ms. Baker a monthly statement reflecting a cash advance in the amount of $13,900, a minimum payment due in the amount of $278.45, a transaction fee in the amount of $50 and a finance charge in the amount of $12.37.

- Following the closing date of January 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting a prior payment and credit in the amount of $300, an

2

**MEMORANDUM DECISION FOLLOWING TRIAL**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

outstanding balance in the amount of $13,858.03 and a finance charge in the amount of $195.66.

- Following the closing date of February 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting a prior payment and credit in the amount of $280, an outstanding balance of $13,775.55 and a finance charge in the amount of $197.52.
- Following the closing date of March 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting a prior payment and credit in the amount of $280, an outstanding balance in the amount of $13,672.55 and a finance charge in the amount of $177.
- Following the closing date of April 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting a prior payment and credit in the amount of $280, an outstanding balance in the amount of $13,589.80 and a finance charge in the amount of $197.25.
- Following the closing date of May 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting an outstanding balance in the amount of $13,689.13, a late fee in the amount of $35 and a finance charge in the amount of $194.
- Following the closing date of June 13, 2006, GE Money Bank sent Ms. Baker a monthly statement reflecting an outstanding balance in the amount of $13,818.80 and a past due payment in the amount of $556.90.

In or around May 2006, Ms. Baker struggled with personal and health issues. Her boyfriend, who is her young child's father, moved out of their home causing her to cope with more debt than she had expected. In addition, she was ill with a developing ulcer. Ms. Baker took a leave of absence from her employment to address these personal hardships. After the four monthly payments to GE Money Bank referenced above, Ms. Baker did not make any further payments on her account.

On June 6, 2006, Ms. Baker filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of California. In schedule F of the bankruptcy petition, Ms. Baker set forth the creditors holding unsecured nonpriority claims against her. The schedule reflects the following credit card debt: (1) Bank of America in the amount of $4,606.63; (2)

Citi Cards in the amount of $10,327.93; (3) GE Money, Inc. in the amount of $13,672.55; and (4) Wells Fargo Card Services in the amount of $5,421.25.

## DISCUSSION

**I.  GE Money Bank Has Not Proven the Necessary Elements of the Claim**

Under §523(a)(2), a discharge under §727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. §523(a)(2)(A). To establish that the extension of credit owed by Ms. Baker is not dischargeable, GE Money Bank must show: (1) that Ms. Baker made a representation; (2) that she knew, at the time, to be false; (3) that she made the representation with the intention and purpose of deceiving GE Money Bank; (4) that GE Money Bank justifiably relied on the representation; and (5) that GE Money Bank sustained the alleged loss and damage as the proximate result of its reliance on the false representation. *In re Diamond,* 285 F.3d 822, 827 (9th Cir. 2002). GE Money Bank bears the burden of proving these elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654 (1991).

**A.  GE Money Bank Has Not Shown the Requisite Intent**

The Ninth Circuit has held that there are three essential inquiries in credit card cases: (1) did the card holder fraudulently fail to disclose his intent not to repay the credit card debt; (2) did the card issuer justifiably rely on a representation by the debtor; and (3) was the debt sought to be discharged proximately caused by the first two elements. *In re Anastas,* 94 F.3d 1280, 1284 (9th Cir. 1996)(citing to *In re Eashai,* 87 F.3d 1082, 1088 (9th Cir. 1996)).

In determining the intent of the credit card holder to repay the debt at the time the credit card was used, the court may refer to the following 12 non-exclusive factors:

(1) length of time between the charges made and the filing of bankruptcy;

(2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

(3) the number of charges;

(4) the amount of charges;

4

  (5) the debtor's financial condition when the charges were made;

  (6) whether the charges were above the credit limit;

  (7) whether the debtor made multiple charges on the same day;

  (8) whether the debtor was employed;

  (9) the debtor's prospects for employment;

  (10) the debtor's financial sophistication;

  (11) whether there was a sudden change in debtor's buying habits; and

  (12) whether the purchases were made for luxuries or necessities.

*Eashai,* 87 F.3d at 1087-88.

  When a credit card holder uses a card, he makes an implied representation that he intends to repay the debt. *In re Anastas,* 94 F.3d at 1285. It is not the representation that the debtor has an *ability* to repay the debt but that he *intends* to repay the debt. *Id.* In determining intent, the focus should not be on whether the debtor was hopelessly insolvent at the time the charges were made. *Id.* "Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Id.* at 1286.

  A view of the debtor's overall financial condition may be a "necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith." *Id.* However, "the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith." *Id.* "The correct inquiry is whether the debtor either intentionally or with recklessness as to its truth or falsity, made the representation that he intended to repay the debt." *Id.*

  GE Money Bank argues that the credit card debt incurred by Ms. Baker should not be discharged for several reasons, including the relatively short period of time between the cash advance and her filing for bankruptcy, and the significant credit card debt she had incurred from GE Money Bank and from other credit cards. In light of a stated current monthly income of $1,565.20 which was listed in Schedule I of her bankruptcy petition, GE Money Bank argues that Ms. Baker had to have known that she could never repay the cash advance that equaled roughly nine months of income and make payments to her other creditors.

5

**MEMORANDUM DECISION FOLLOWING TRIAL**

However, GE Money Bank has not shown that Ms. Baker failed to disclose her intent not to repay the credit card debt. Ms. Baker testified that she had intended to repay the debt that was incurred in or around December 2005. She obtained the cash advance because "[GE Money Bank] offered [her] a better and lower rate than MBNA had offered [her] and so [she] took them up on the better rate." (Tr. 11:08:30). Indeed, Ms. Baker made four of the monthly payments to GE Money Bank. In *In re Anastas,* the court found that a debtor who made six monthly payments did not behave as if he intended to incur a debt without repayment. *In re Anastas,* 94 F.3d at 1287. Moreover, two events unexpectedly impacted Ms. Baker's finances: (1) in or around May 2006, her live-in boyfriend and child's father unexpectedly moved out of their home leaving her to cope with more debt than she had expected; and (2) she suffered from a developing ulcer. Ms. Baker was forced to take a leave of absence in 2006 which further reduced her income. Despite her best efforts, Ms. Baker filed for bankruptcy in June 2006.

In viewing the facts at hand in light of the 12 non-exclusive factors cited in *In re Eashai,* Ms. Baker incurred one charge in order to reduce the interest payment on her debt, she remained employed at HSBC before and after she incurred the charge, and there is no evidence demonstrating any sudden change in buying habits or any evidence of frivolous spending. Notwithstanding Ms. Baker's lack of financial sophistication or even her hopelessly insolvent condition, GE Money Bank has not shown that she petitioned for bankruptcy to avoid the debt. As such, the record does not show that Ms. Baker did not intend to repay the debt to GE Money Bank. I am persuaded that Ms. Baker sincerely intended to pay her debt to GE Money Bank at the time she transferred her balance to GE Money Bank

### B.     Other Elements of the Claim

Because GE Money Bank has not shown the requisite intent, the court need not consider whether the other elements of the claim have been met. Accordingly, judgment is awarded in favor of the Ms. Baker.

# CONCLUSION

For the foregoing reasons, the court concludes that the debt incurred by Joann Baker is dischargeable pursuant to §523(a)(2).

Good cause appearing, IT IS SO ORDERED.

**\* \* \* END OF ORDER \* \* \***

Adv. No. 06-5164

**SERVICE LIST**

Stephen L. Chesney
Vanlochem & Chesney LLP
6565 Sunset Boulevard, Suite 422
Hollywood, CA 90028

Paul W. Moncrief
Paul Hart
Johnson and Moncrief, PLC
295 Main Street, Suite 600
Salinas, CA 93901